Brassard, J.
The plaintiffs in this action are Mario Sousa (“Mario”) by his mother and next friend Linda Sousa (“Mrs. Sousa”), Mrs. Sousa individually, and Paulo Sousa (“Mr. Sousa”). They allege negligence, medical malpractice, false imprisonment or unlawful detention, defamation, and negligent or reckless infliction .of emotional distress against Baystate Medical Center (“Baystate”), Edward N. Bailey, M.D. (“Bailey”), Medical West Community Health Plan, Inc. (“Medical West”), and MetPath/New England, Inc. (“MetPath”). The matter is before the Court on a motion to dismiss by Baystate and Bailey. For reasons stated, the motion is allowed in part and denied in part.
BACKGROUND
In their complaint the plaintiffs allege that on or about Friday, November 1, 1991, Mrs. Sousa brought *151 Mario to a Medical West clinic in Springfield for a routine checkup. Mario was three years old. Mario was not displaying any unusual or significant symptoms, and the records of the checkup reflected a normal physical exam, concluding that Mario was a “well child.” During the examination, blood was drawn from Mario without prior explanation to or informed consent from Mrs. Sousa. The blood sample was sent to MetPath for analysis.
On Monday, November 4, 1991, three days after the checkup, a Medical West nurse-practitioner called Mrs. Sousa to state that laboratory results indicated that Mario had a “lethal” dose of diphenhydramine (“benadryl”) in his bloodstream. The nurse-practitioner did not question Mrs. Sousa about Mario’s current condition or whether he had displayed any unusual symptoms since the checkup. In fact, Mario appeared to his mother to be completely normal, and had showed no symptoms of any illness during the weekend.
At around 5:45 that evening, the nurse-practitioner telephoned Mrs. Sousa and told her it was imperative that she bring Mario to Baystate immediately for observation and treatment'. Upon her arrival at Baystate, Mrs. Sousa was met by a resident who interrogated her about the benadryl in Mario’s blood test but did not examine Mario. Mrs. Sousa and Mario were seen by a doctor several hours later. During the intervening time, Mrs. Sousa had not been allowed to leave Baystate when she expressed an intent to take Mario to a different hospital for examination. When a physician finally saw them, he only gave Mario a cursory physical examination and found no symptoms of benadryl toxicity. The Baystate staff nevertheless refused to release Mario. Mrs. Sousa was forced to stay overnight at Baystate with him. During that time, no further blood was drawn from Mario and no tests were undertaken to confirm the MetPath diagnosis, to assess Mario’s condition, or to determine how to treat him or what treatment might be necessary.
On the morning of Tuesday, November 5, Mario was examined by another doctor. Later, the defendant Bailey entered the room, and without examining Mario sent him into an adjacent playroom. Bailey then accused Mr. and Mrs. Sousa of trying to kill Mario and stated as a fact that Mario had been given an extremely high amount of benadryl. Mrs. Sousa conducted inquiries during November 5 of her husband, her mother, and teachers at Mario’s school to find out if any of them had administered high levels of benadryl to Mario. All denied that they had and were angry and resentful because of the inquiry. During the same day, Mrs. Sousa repeatedly told various doctors and nurses at Baystate that she wished to leave; they continued to refuse to allow her to take Mario from the hospital.
Almost 24 hours after first being told that her son’s blood contained high levels of benadryl, and four days after Mario’s blood sample had been taken, Mr. and Mrs. Sousa were finally informed by a doctor that the accusations were based on a “lab error,” and Mrs. Sousa and her son were allowed to leave Baystate.
The plaintiffs brought this matter before a medical tribunal pursuant to G.L.c. 231, §60B, and presented-substantially similar evidence to what they pleaded in their complaint. The tribunal concluded that there was not sufficient evidence to raise a legitimate question of liability appropriate for judicial inquiry.
Baystate and Bailey have brought this motion to dismiss, alleging that the determination of the medical tribunal and the failure of the plaintiffs to file a bond requires dismissal of the action.
DISCUSSION
G.L.c. 231, §60B states in part: “Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal... at which the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiffs case is merely an unfortunate medical result ... If a finding is made for the defendant or defendants in the case the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of six thousand dollars ... If said bond is not posted within thirty days of the tribunal’s finding the action shall be dismissed.”
A tribunal is limited to deciding only “medical aspects” of an action. Kapp v. Ballantine, 380 Mass. 186,192, fh. 6 (1980); Salem Orthopedic Surgeons, Inc. v. Quinn, 377 Mass. 514, 521 (1979). In interpreting the meaning of this language, the Supreme Judicial Court in Leininger v. Franklin Medical Center, 404 Mass. 245 (1989), discussed facts very similar to those in the case at hand. In Leininger, the plaintiff alleged that a medical center, the director of the center’s psychiatric unit, and a staff psychiatrist committed her to a mental health facility illegally by failing to follow the requirements of the civil commitment statute. Id. at 245. After being confined for a day, the plaintiff was informed that her confinement had been a “mistake” and that she was free to leave. Id. at 247. The plaintiff brought suit, asserting violations of her civil rights under G.L.c. 12, §1II, false imprisonment, and intentional infliction of emotional distress. Id. at 245-46. A medical malpractice tribunal found that the plaintiffs evidence did not raise a legitimate question of liability. Id. at 246. The plaintiff did not post bond. Id. at 246. The Supreme Judicial Court held that the defendants’ failure to comply with the requirements of the civil commitment statute was not a medical decision, and that an evaluation of this decision was beyond the jurisdiction of the medical tribunal, so that the plaintiffs claims were not barred by the tribunal’s decision. Id. at 248.
The Supreme Judicial Court has also stated that when two or more theories of liability, including a negligence claim, are proffered by a plaintiff against *152 medical practitioners, the negligence claim may only proceed without a bond following a decision to this effect by the tribunal. Lubanes v. George, 386 Mass. 320, 327 (1982). Other theories, such as battery based on an unconsented medical procedure, may proceed without a bond regardless of the tribunal’s decision. Id.
In this case, the plaintiffs’ claims for negligence and medical malpractice implicate actions of the defendants in relying upon and interpreting laboratory results, which are clearly medical decisions. The causes of action arising out of these decisions are barred by the report of the medical tribunal. The plaintiffs’ additional claims for false imprisonment, defamation, and infliction of emotional distress, however, are analogous to the claims brought by the plaintiff in Leintnger and the battery claim brought by the plaintiff in Lubanes, and are outside the jurisdiction of the medical tribunal. These claims are therefore not barred by the report of the tribunal.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion to dismiss brought by Baystate Medical Center and Edward N. Bailey, M.D. be ALLOWED as to claims of negligence and medical malpractice, and DENIED as to claims of false imprisonment, defamation, and infliction of emotional distress.